# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSNY CIRENE, et als., <br><br> Plaintiffs, <br><br> v. <br><br> VITEL COMMUNICATIONS LLC, JNET COMMUNICATIONS LLC, and DAVID JEFFERSON, SR., personally and individually, <br><br> Defendants. | CIVIL ACTION NO.: 3:11-cv-02509 (MAS)(LHG) <br><br> Return Date: Monday, March 18, 2013 |

---

## MEMORANDUM IN SUPPORT OF JOINT MOTION FOR APPROVAL OF FLSA SETTLEMENT AND DISMISSAL OF CLAIMS

---

Rachhana T. Srey, Esq.
**NICHOLS KASTER, PLLP**
4600 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Fax: (612) 215-6870
Attorneys for Plaintiffs
*\* Admitted pro hac vice*

Eric L. Probst, Esq.
**PORZIO, BROMBERG & NEWMAN, P.C.**
100 Southgate Parkway
Morristown, NJ 07960
Telephone: (973) 538-4006
Fax: (973) 538-5146
Attorneys for Defendants

2344847

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ............................................................................................... 1

RELEVANT BACKGROUND ............................................................................ 1

I.  PROCEDURAL HISTORY .......................................................................... 1

II. THE SETTLEMENT ..................................................................................... 2

    A.  Private Mediation ................................................................................ 2

    B.  The Settlement Amount, Allocation, and Distribution ....................... 3

    C.  Notice Procedure and Participation .................................................... 6

    D.  The Release of Claims ......................................................................... 7

LEGAL ANALYSIS ........................................................................................... 7

I.  JURISDICTION AND VENUE .................................................................... 7

II. THE PROPOSED SETTLEMENT APPROPRIATELY RESOLVES THE
PARTIES' CLAIMS AND DEFENSES ......................................................... 8

    A.  Standard for Approval of Settlement of FLSA Collective Actions ...... 8

    B.  The Proposed Settlement Is Fair and Reasonable ................................ 9

        1.  A *Bona Fide* Dispute Exists Between the Parties ...................... 9

        2.  The Settlement Was the Product of Good Faith, Arms-Length
Negotiations
by Experienced Counsel .......................................................... 10

        3.  This Case Advanced To a Stage at Which the Risks of Continued
Litigation Could Be Evaluated ................................................ 11

        4.  No Plaintiffs Rejected the Settlement, and Over 76 Percent of the
Plaintiffs
Have Accepted the Settlement ................................................. 11

    C.  Plaintiffs' Counsel's Fees and Costs are Reasonable .......................... 12

    D.  The Court Should Approve Service Payments to the Named Plaintiffs and
Five Other Plaintiffs Who Were Deposed ......................................... 17

CONCLUSION .................................................................................................. 18

i

# TABLE OF AUTHORITIES

Page(s)

## CASES

Bredbenner v. Liberty Travel, Inc., 2011 WL 1344745 (D.N.J. Apr. 8, 2011) .................8, 13, 16

Brooklyn Savings Bank v. O'Neil, 324 U.S. 697 (1945) ...........................................................8

Brumley v. Carmin Cargo Control, Inc., 2012 WL 1019337 (D.N.J. Mar. 26, 2012) .........................................................................................................8, 9, 13, 15, 16

Burkholder v. City of Ft. Wayne, 750 F. Supp. 2d 990 (N.D. Ind. 2010) ....................................15

Chemi v. Champion Mortg., 2009 WL 1470429 (D.N.J. May 26, 2009).........................13, 16, 17

Clark v. Ecolab, Inc., 2010 WL 1948198 (S.D.N.Y. May 11, 2010) ...........................................16

Collins v. Sanderson Farms, Inc., 568 F. Supp. 2d 714 (E.D. La. 2008)........................................9

D.A. Schulte, Inc. v. Gangi, 328 U.S. 108 (1946) ...................................................................8

Faican v. Rapid Park Holding Corp., 2010 WL 2679903 (E.D.N.Y. July 1, 2010) ....................15

Girsh v. Jepson, 521 F.2d 153 (3d Cir. 1975) .........................................................................9

Heath v. Hard Rock Cafe Int'l (STP), Inc., 2011 WL 5877506 (M.D. Fla. Oct. 28, 2011) ........................................................................................................15, 16, 17

Hensley v. Eckerhart, 461 U.S. 424 (1983) .........................................................................12

Houston v. URS Corp., 2009 WL 2474055 (E.D. Va. Aug. 7, 2009) ....................................9, 11

In re AT & T Corp., 455 F.3d 160 (3d Cir.2006) ..................................................................13

In re Cendant Corp. Sec. Litig., 404 F.3d 173 (3d Cir.2005) ................................................13

In re Diet Drugs Product Liability Litig., 582 F.3d 524 (3d Cir.2009) ....................................13

Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1353 (11th Cir. 1982)...................8, 10

Moore, 2009 WL 2848858, at *3 .........................................................................................10

Risch v. Natoli Engineering Co., LLC, 2012 WL 3242099 (E.D. Mo. Aug. 7, 2012)................17

Sanderson v. Unilever Supply Chain, Inc., 2011 WL 6369395 (W.D. Mo. Dec. 19, 2011) ........16

Scott v. Memory Co., LLC, 2010 WL 4683621 (M.D. Ala. Nov. 10, 2010) ...............................15

Torres v. Gristede's Operating Corp., 2010 WL 5507892 (S.D.N.Y. Dec. 21, 2010) .................17

Wineland v. Casey's Gen. Stores, Inc., 267 F.R.D. 669 (S.D. Iowa 2009)....................................15

Yarrington v. Solvay Pharmaceuticals, Inc., 697 F. Supp. 2d 1057 (D. Minn. 2010)...................15

## STATUTES

28 U.S.C. § 1331 ...........................................................................................................................7

29 U.S.C. § 216(b) .................................................................................................................1, 2, 7, 9, 12

29 U.S.C. § 201 ..........................................................................................................................1, 7

## RULES

Fed. R. Civ. 23 .............................................................................................................................9

Fed. R. Civ. P. 30(b)(6).................................................................................................................2

2344847

## INTRODUCTION

Plaintiffs, together with Defendants Vitel Communications LLC, JNET Communications LLC, and David Jefferson, Sr., (hereinafter collectively "Defendants"), bring this motion requesting that the Court (1) approve their settlement of this Fair Labor Standards Act ("FLSA") collective action, including the plaintiff releases associated therewith, and (2) dismiss the action in its entirety. The proposed settlement resolves a *bona fide* dispute over overtime wages, and was reached in good faith after a mediation session with a qualified mediator. All parties believe that the settlement is fair and reasonable. For all of the reasons set forth herein, the parties jointly request that their motion for settlement approval and dismissal be granted as set forth in the Proposed Order.

## RELEVANT BACKGROUND

### I.   PROCEDURAL HISTORY

On May 2, 2011, Named Plaintiffs Josny Cirene and Dubenson Julien filed this FLSA collective action lawsuit pursuant to 29 U.S.C. § 216(b), seeking unpaid overtime compensation on behalf of themselves and other similarly-situated cable technicians employed by Defendants. (ECF No. 1 (Compl.).) Plaintiffs alleged that under Defendants' piece-rate compensation plan, they and other technicians were not properly paid overtime pay in violation of the FLSA, 29 U.S.C. § 201, et seq. (Id.) On December 22, 2011, Plaintiffs filed an Amended Complaint, added as named Plaintiffs all of the individuals who had joined the lawsuit as "Opt-in" Plaintiffs as of that date. (ECF No. 39.) As of December 22, 2011, 128 other individuals had filed consent forms with the Court. (Id.) The Amended Complaint also added Mr. David Jefferson, Sr., Defendants' CEO, as a defendant in his individual capacity. (Id.) After Plaintiffs filed their First Amended Complaint, 35 additional technicians consented to join the lawsuit. (ECF Nos.

1

44, 45, 50, 52, 54, 56, 60, 64, 69, 71, 72, 73, and 76.)   Defendants filed their Answer to Plaintiffs' First Amended Complaint on January 19, 2012, denying the allegations and requests for relief in the First Amended Complaint.  (ECF No. 46 (Answer).)

On February 17, 2012, Plaintiffs filed their motion for conditional certification and court-authorized notice pursuant to 29 U.S.C. § 216(b).  (ECF No. 51.)  Defendants requested and were granted permission to conduct limited discovery before filing their response to Plaintiffs' conditional certification motion.   (ECF Nos. 55, 58.)  Defendants deposed five technicians and filed an opposition to Plaintiffs' conditional certification motion on April 4, 2012, and Plaintiffs filed a reply memorandum on April 9, 2012.  (ECF Nos. 61 and 62.)

For Plaintiffs' discovery efforts, Plaintiffs served discovery written requests on Defendants, and scheduled the depositions of Defendants' corporate representatives pursuant to Fed. R. Civ. P. 30(b)(6) and other fact witnesses, including Defendant Jefferson.  (Srey Decl. ¶ 3.)   The parties ultimately reached an agreement to conduct representative discovery on a sample of twenty Plaintiffs.  (Id. ¶ 4.)

In June 2012, the parties began discussing the possibility of mediating Plaintiffs' claims, and agreed to attend a private mediation session with Mark Irvings, a mediator experienced in mediating FLSA collective actions.  (Id. ¶ 5.)  With the Court's approval, the parties agreed to postpone the taking of depositions until after the mediation.  (Id.)

## II.    THE SETTLEMENT

### A.    Private Mediation

Prior to mediation, Defendants provided Plaintiffs with payroll information for all Plaintiffs.  Using this information, Plaintiffs' Counsel calculated the overtime compensation allegedly due for each Plaintiff between June 21, 2008 and February 5, 2011, which was the time

2

period that Defendants' piece-rate compensation plan that was the subject of the lawsuit was in place, and in light of their applicable statute of limitations.  (Id. ¶ 6.)

On July 11, 2012, the parties held a mediation session with Mr. Irvings.  (Id. ¶ 7.)  While the parties did not reach a settlement at the actual mediation session, with the assistance of Mr. Irvings, the parties subsequently agreed to the essential terms and conditions of a settlement and outlined a Memorandum of Understanding memorializing these terms.  (Id.)

The parties agreed to settle the claims of only those Plaintiffs who had join the litigation and agreed to ask the Court stay its ruling on Plaintiffs' pending conditional certification motion. (ECF No. 77.)

**B.      The Settlement Amount, Allocation, and Distribution**

The parties later drafted and signed a Settlement Agreement and Release ("Agreement"), attached as Exhibit A to the Declaration of Rachhana T. Srey.   Under the terms of the Agreement, subject to approval by the Court, Defendants will pay a total settlement amount of $500,000.00 to resolve the claims of the Settling Plaintiffs,[1] inclusive of attorneys' fees and litigation costs. (Ex. A, ¶ 2(A).)

Plaintiffs' Counsel allocated the total settlement amount as follows.  Consistent with Plaintiffs' contingency fee agreements with Plaintiffs' Counsel, attorneys' fees in the amount of $166,666.67, and costs in the amount of $29,940.57, were first deducted from the total settlement amount.  (Srey Decl. ¶ 8.)  Next, a contingency fund of $2,000.00 was deducted from the total settlement amount and set aside to effectuate the purpose of the Agreement.  (Id.)  Then, a total of $1,750.00 in service payments was allocated to the two original Named Plaintiffs, Cirene and

---

[1]      Pursuant to the Agreement, "Settling Plaintiff" is defined as all Named and Opt-in Plaintiffs included within the scope of the settlement class who timely execute and return a release. (Ex. A, ¶ 1(G).)

3

Julien, and the five other Plaintiffs who were deposed, in recognition of their time and effort assisting with securing the settlement and serving the collective group. (Id.)

The remainder of the settlement amount, $299,642.76 was allocated to each of the 165 Plaintiffs within the scope of the settlement class (as defined in Section 2(B) of the Agreement). Their pro rata share of the settlement was based on a formula that took into consideration each Plaintiff's consent filing date, the number of eligible weeks each Plaintiff worked during the period between June 21, 2008, and February 5, 2011, and within the relevant statutory period, and each Plaintiff's income earnings. (Srey Decl. ¶ 9.) A minimum amount allocated to any Plaintiff was set at $200.00. (Id.)

In light of Defendants' ability to pay a settlement in one lump sum, the parties agreed to a payment plan consisting of multiple payments over time for the next five years, beginning in 2013. (Id. ¶ 10.) Specifically, under the terms of the Agreement, and upon Court approval, the gross settlement amount of $500,000.00, including the amount of attorneys' fees and costs to Plaintiffs' Counsel, will be paid in installments beginning on or before March 31, 2013, and continuing thereafter on a quarterly basis until the final installment payment is made in the fourth quarter of 2017. (Ex. A, 2(C).) Each quarterly installment shall be wire transferred to Plaintiffs' Counsel's client trust account. (Id.) Defendants are required to make a minimum payment of at least $15,000.00 each quarter on or before the end of the quarter, so that by December 15, of each calendar year, starting in 2013 and continuing to 2017, there is a total of $100,000.00 to be disbursed as that year's settlement payments. (Id.)

After December 15th of each calendar year beginning in 2013, Plaintiffs' Counsel is required to wire transfer the money back to Defendants or their payroll administrator for the actual printing of all Settling Plaintiffs' settlement checks. (Ex. A, 2(F).) Each year, each

4

Settling Plaintiff will be issued one settlement check. (Id.) One-half of each scheduled settlement payment will be reported as wages for tax purposes with each Settling Plaintiff receiving an IRS Form W-2 for such portion of the settlement payment. The other half of each scheduled settlement payment will cover the remaining half of the settlement payment and shall constitute payment for liquidated damages and will be reported on an IRS Form 1099. (Id.) All amounts allocated as attorneys' fees and costs will be paid to Plaintiffs' Counsel, Nichols Kaster, PLLP, and will be reported on an IRS Form 1099. (Id.) Defendants shall deliver all settlement checks to Plaintiffs' Counsel for disbursement no later than December 20th of each year beginning in 2013.

Each Settling Plaintiff will have ninety (90) days from the date each check is issued to cash their settlement check. After the expiration of the 90-day period, any uncashed checks will be voided and the check amount will be donated to charity. (Ex. B (Sample Notice of Settlement and Release of Claims Form).) A Settling Plaintiff who does not timely cash a settlement check cannot later make a claim for the payment that was voided. (Id.) Failure to timely cash a settlement check in any year, however, will not preclude a Settling Plaintiff from receiving any outstanding future settlement payments under the five-year schedule in the Agreement. (Id.)

The Agreement also includes specific penalties if Defendants fail to make timely payments under the payment plan scheduled discussed above. Indeed, if Defendants do not make payment for an entire quarterly period, they must pay an additional 10% interest per annum for the duration of the non-payment, commencing at the expiration of the unpaid quarter. (Ex. A, ¶ 2(C).) If two consecutive payments are missed, then, in addition to the above interest, Defendants would have to pay a 5% penalty of quarterly sums not paid. (Id.) If three consecutive payments are missed after the passage of nine (9) months, then, in addition to the

5

10% interest charge, 5% of the quarterly sums not paid, the remaining balance of the gross settlement amount (minus any sums already paid) will become immediately due. (<u>Id.</u>)

### C.    Notice Procedure and Participation

The Parties agreed that each of the 165 Plaintiffs included within the scope of the settlement class would be given an opportunity to accept or reject their individual settlement offer. (Ex. B.)   Therefore, on January 28, 2013, Plaintiffs' Counsel mailed the Notice of Settlement and Release of Claims Form to each of the 165 Plaintiffs. (Srey Decl. ¶ 11.) Plaintiffs' Counsel were available, and answered many questions from Plaintiffs regarding the settlement, allocations, and timing of payments. (<u>Id.</u>)   The 165 Plaintiffs were initially given until Wednesday, February 27, 2013, to sign and return the Release of Claims Forms if they chose to accept their individual settlement offer. (Ex. B.)   The parties subsequently agreed to extend this deadline by one week to Wednesday, March 6, 2013. (Srey Decl. ¶ 12.)   Since mailing the Notice of Settlement and Release of Claims Form, Plaintiffs' Counsel made diligent efforts to obtain timely responses from each Plaintiff, including emails and telephone calls. (<u>Id.</u> ¶ 13.)   Of the 165 Plaintiffs included in the scope of the settlement, 126 returned a Release of Claims Form and are therefore considered "Settling Plaintiffs," none decided to "reject" Defendants' settlement offer and is considered a "Rejecter," and thirty-nine (39) neither returned a Release of Claims Form nor rejected their settlement offer and are therefore considered "Non-Responders" under the terms of the Agreement, Section 1(E), (F), (G). (<u>Id.</u> ¶ 14.)

6

### D.      The Release of Claims

In consideration for the total settlement payment from Defendants, each of the 126 Settling Plaintiffs was required to return a Release of Claims Form.  (See Ex. B.)  The Release of Claims Form releases Defendants and the other Releasees[2] from:

> [A]ny and all past and present, known and unknown, foreseen and unforeseen statutory claims, rights or causes of action they may have or claim to have against Defendants for overtime compensation, minimum wages, punitive damages, liquidated damages, penalties, interest, and attorneys' fees ("Released Claims"), asserted on each Settling Plaintiff's behalf, or that could have been asserted on each Settling Plaintiff's behalf, by any person, government authority, or entity, and  arising under the Fair Labor Standards Act, the New Jersey Wage and Hour Law, the New Jersey Wage Payment Law, the Georgia Minimum Wage Law, The Official Code of Georgia Annotated, the Michigan Wage Law of 1964, the Michigan Comp. Laws, or any other wage-related statutes, ordinances, orders, state or federal regulations, or common-law causes of actions for the Released Claims outlined above and for all other states, and at law or at equity, which any such Settling Plaintiff has or might have, or could have arisen, at any time on or before the date of this Agreement.

(Ex. A, ¶ 3.)

## LEGAL ANALYSIS

### I.      JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this action and personal jurisdiction over Defendants, and venue is proper.  An FLSA action shall be brought in a federal or state court of competent jurisdiction.  29 U.S.C. § 216(b).  This action was filed in the United States District Court for the District of New Jersey pursuant to the Court's federal question jurisdiction, 28 U.S.C. § 1331, for claims arising under the FLSA, 29 U.S.C. § 201 *et seq.*  (See ECF No. 39 (Am. Compl.) ¶ 1.)  Venue was appropriate in this District.  (See ECF No. 39 (Am. Compl.) ¶ 2.)

---

[2]      "Releasees" includes Defendants together with their current, former or future officials, officers, directors, shareholders, administrators, employees, agents, servants, representatives, attorneys, insurers, predecessors, subsidiaries, affiliates, and successors, including but not limited individual Defendant, Mr. Jefferson.  (Ex. A, ¶ 3.)

7

## II.   THE PROPOSED SETTLEMENT APPROPRIATELY RESOLVES THE PARTIES' CLAIMS AND DEFENSES

### A.   Standard for Approval of Settlement of FLSA Collective Actions

FLSA claims may only be comprised by the DOL or through a judicially approved stipulated settlement.  See D.A. Schulte, Inc. v. Gangi, 328 U.S. 108, 116 (1946); Brooklyn Savings Bank v. O'Neil, 324 U.S. 697 (1945); Brumley v. Carmin Cargo Control, Inc., 2012 WL 1019337, at *1 (D.N.J. Mar. 26, 2012).  The district court may enter a stipulated judgment if it determines that the compromised reached "is a fair and reasonable resolution of a bona fide dispute over FLA provisions."  Brumley, 2012 WL 1019337, at *2 (citing Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1353 (11th Cir. 1982)).

Recognizing that the Third Circuit has not directly addressed the factors to be considered in deciding motions for approval of FLSA settlements, this district court like others typically looks to the considerations set forth in Lynn's Food.  See, e.g., Brumley, 2012 WL 1019337, at *2; Bredbenner v. Liberty Travel, Inc., 2011 WL 1344745, at *18 (D.N.J. Apr. 8, 2011).

Under Lynn's Food, in approving a settlement, the primary consideration in determining whether a settlement is fair and reasonable is the strength and nature of the claims in light of the possible defenses.  Lynn's Food, 679 F.2d at 1353.  Further, this district court has considered the following factors for approving FLSA settlements: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risks of establishing damages; (6) risks of maintaining the class action through the trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. See Brumley, 2012 WL

8

2344847

1019337, at *4 (applying the Girsh v. Jepson, 521 F.2d 153, 157 (3d Cir. 1975) factors established for Fed. R. Civ. 23 class action settlements to a Section 216(b) FLSA settlement). Further, as a general rule, "[w]hen a settlement agreement has been the subject of arm's-length bargaining, with class counsel in a position to evaluate accurately the chances of the class prevailing if the case went to trial and where no objections are raised by any of the affected parties, there is a strong presumption in favor of the settlement." Houston v. URS Corp., 2009 WL 2474055, at *5 (E.D. Va. Aug. 7, 2009).

**B.    The Proposed Settlement Is Fair and Reasonable**

**1.    A *Bona Fide* Dispute Exists Between the Parties**

A *bona fide* dispute exists "when an employee makes a claim that he or she is entitled to overtime payment," and when settlement requires resolution of the overtime payment due. Id. at *9.  In determining whether a *bona fide* dispute exists, a court must "ensure that the parties are not, via settlement of the plaintiffs' claims, negotiating around the clear FLSA requirements of compensation for all hours worked, minimum wages, maximum hours, and overtime."  See Collins v. Sanderson Farms, Inc., 568 F. Supp. 2d 714, 719 (E.D. La. 2008).

A *bona fide* dispute clearly exists in this case.  Plaintiffs and other similarly situated technicians claimed that they were not properly paid all of their overtime pay under Defendants' piece rate plan that was in effect from June 21, 2008 and February 5, 2011. Defendants denied that it violated FLSA or any other law in any manner and specifically denied that the technicians were owed any additional overtime under the FLSA.  Although both parties continue to firmly believe in the merits of their respective claims and defenses, given the time and expenses associated with full-blown litigation and discovery, the uncertainty of motion practice and trial, the risk of significant delay, the ability to collect a judgment if one is obtained, the ability of

9

Defendants to pay a greater judgment if one is obtained, and the ability of Defendants to pay a settlement in one lump sum, the parties agree that a compromise consisting of the payment schedule is appropriate at this stage of the litigation.  They desire to resolve this case by way of a negotiated settlement payment over time by Defendants to Plaintiffs, in exchange for releases of claims by Plaintiffs in order to avoid the time and expense inherent in continued litigation.  See Lynn's Food Stores, Inc., 679 F.2d at 1354 ("Thus, when the parties [to litigation] submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching.").

### 2.    The Settlement Was the Product of Good Faith, Arms-Length Negotiations by Experienced Counsel

The settlement was reached as a result of extensive arm's-length negotiations between the parties through participation by counsel in a mediation session and subsequent settlement discussions with a qualified mediator, Mark Irvings.  (Srey Decl. ¶ 7.)  Mr. Irvings has many years of experience in mediating FLSA cases.  (Id., Ex. C.)

Plaintiffs' Counsel have the experience to assess the risks of continued litigation, particularly the inability to collect even if a judgment were obtained, and benefits of settlement. See Moore, 2009 WL 2848858, at *3.  Plaintiffs' Counsel has a long-standing national practice representing employees with claims against employers similar to the claims asserted in this case. See generally http://www.nka.com/ (counsel's website); Srey Decl. ¶ 15, Nichols Kaster, PLLP's Firm Resume, Ex. D.  Defense counsel is likewise experienced in defending similar claims. Counsel for both sides have advised their respective clients regarding the settlement, and they have recommended judicial approval thereof; this Court should afford that recommendation some weight.  See Houston, 2009 WL 2474055, at *7.

10

### 3.      This Case Advanced To a Stage at Which the Risks of Continued Litigation Could Be Evaluated

As set forth above, the parties conducted months of protracted litigation prior to settlement in this case, completing their briefing on the conditional certification issue. Without question, if the case would not have settled, the parties would have spent significant additional time and resources completing written and deposition discovery, including depositions of representative sample Plaintiffs, and corporate and fact witnesses.    Thereafter, assuming Plaintiffs' conditional certification motion would have been granted, the parties would have litigated a motion for decertification and filed dispositive motions.

In short, the proceedings had advanced to a stage sufficient to permit the parties and their counsel to collect, obtain, and review evidence, evaluate their claims and defenses, assess their witnesses, understand the scope of potential damages, and engage in negotiations with the mutual understanding that continuing toward additional formal discovery, decertification and dispositive motion practice, would be a difficult, costly and uncertain undertaking.  Based on that analysis, the parties believe that settlement on the terms set forth in the Agreement is in their best interests.

### 4.      No Plaintiffs Rejected the Settlement, and Over 76 Percent of the Plaintiffs Have Accepted the Settlement

Finally, the reaction of the Plaintiffs to the settlement also supports a finding that the settlement is fair and reasonable.  None of the 165 Plaintiffs included within the scope of the settlement class has rejected his individual settlement offer.  Of the 165 Plaintiffs included within the scope of the settlement class, 126 have accepted the settlement offer and executed and returned a Release of Claims Form.  And, despite all of Plaintiffs' counsel's efforts, which included repeated emails and telephone calls, thirty-nine (39) Plaintiffs took no affirmative action and neither accepted nor rejected their individual settlement offer.  (Srey Decl. ¶ 14.)

11

Exhibit E, attached to the Declaration of Rachhana T. Srey, details Plaintiffs' counsel's numerous attempts to obtain affirmative responses from these Plaintiffs—whether in the form of an acceptance or rejection. Under the terms of the Agreement, these Plaintiffs are considered "Non-Responders," and shall be dismissed from the action *without* prejudice. (Ex. A, ¶ 2(H).) The individual settlement offers of these thirty-nine (39) Non-Responders will be donated to a cy pres organization chosen by Plaintiffs' Counsel. (Id.)

The fact that all responsive Plaintiffs accepted, rather than rejected their individual settlement offer is further evidence of the settlement's reasonableness.

### C.   Plaintiffs' Counsel's Fees and Costs are Reasonable

As mentioned above, Plaintiffs' Counsel deducted from the $500,000.00 total settlement amount, $166,666.67 as attorneys' fees, which represents one-third (33.33% percent) of the settlement fund. Plaintiffs' counsel is requesting the Court to approve this amount as reasonable for attorneys' fees.

Under the FLSA, the court "shall in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). What constitutes a reasonable fee is within the sound discretion of the district court. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). A critical factor in determining the reasonableness of the amount to award as attorneys' fees is the success of the litigation. Id. at 436.

Under Third Circuit law, a court may evaluate the award of attorneys' fees through two established methods: (1) the lodestar approach, and (2) the percentage of the recovery approach. In re Diet Drugs Product Liability Litig., 582 F.3d 524, 540 (3d Cir.2009); In re AT & T Corp., 455 F.3d 160, 164 (3d Cir.2006). Under the common fund doctrine, "a private plaintiff, or

12

plaintiff's attorney, whose efforts create, discover, increase, or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation, including attorneys' fees." In re Cendant Corp. Sec. Litig., 404 F.3d 173, 187 (3d Cir.2005) (citation omitted). Courts in this Circuit have favored the percentage-of-recovery method in wage-and-hour cases such as this where a common fund is established. See, e.g., Bredbenner, 2011 WL 1344745, at *19; Chemi v. Champion Mortg., 2009 WL 1470429, *10 (D.N.J. May 26, 2009).

In determining what constitutes a reasonable percentage fee award in an FLSA case, courts in this Circuit consider several factors including: (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; (7) the awards in similar cases; and (8) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained. See, e.g., Brumley, 2012 WL1019337, at *9-12; Bredbenner, 2011 WL 1344745, at *19.

The settlement in this case created a common fund of $500,000.00 for 165 opt-in Plaintiffs. Plaintiffs' Counsel's work on this case resulted in settlement offers to each of the 165 Plaintiffs who would likely have received nothing in the absence of Plaintiffs' Counsel's efforts. Plaintiffs' Counsel secured what they believe to be a fair and reasonable settlement and payment schedule in light of disputed liability and damages issues, the limited time period in which the compensation plan subject to this litigation was actually in effect, the risk of significant delay, the defenses asserted by Defendants, the ability to collect a judgment if one is obtained, and the

13

ability of Defendants to pay a judgment if one is obtained or to pay a settlement in one lump sum.  (Ex. B.)

Although court-authorized notice was not sent to the putative class, 165 Plaintiffs were notified of, and joined this case, largely because of Plaintiffs' Counsel's informal marketing efforts.  (Srey Decl. ¶ 16.)  Plaintiffs' Counsel thoroughly investigated Plaintiffs' claims, and persistently pursued this case even after Defendants did not file an answer to Plaintiffs' original Complaint.  (Id.)  For example, on October 20, 2011, Plaintiffs' Counsel requested leave to amend the Complaint to add each opt-in Plaintiffs as named Plaintiffs in order to protect their claims should a default motion be necessary.  (Id.; ECF No. 34.)  After Defendants answered the First Amended Complaint, Plaintiffs' Counsel gathered the necessary discovery to file an early conditional certification motion and diligently pursued discovery from Defendants.  (Srey Decl. ¶ 16.)

Plaintiffs in this case are being represented by Plaintiffs' Counsel on a contingency basis, and the requested fees and costs reflect the terms of that agreement.  (Id. ¶ 17.)  Those legal services agreements provide for payment of attorneys' fees to Plaintiffs' Counsel in the amount of one-third of any settlement.  (Id.)  Because of this contingency fee arrangement, Plaintiffs' Counsel have not received any payment for their time spent litigating the case, nor have they received reimbursement for their out of pocket costs during the litigation.  (Id)  Instead, Plaintiffs' Counsel alone shouldered the financial risk of recovering nothing for their time and resources spent litigating the case.  Because Plaintiffs' Counsel litigated this case aggressively and effectively, they were able to obtain monetary relief for 165 Plaintiffs by investigating Plaintiffs' claims and gathering the necessary information regarding the merits of Plaintiffs' claims and Defendants' defenses.  This contingency fee agreement should be honored.  See

14

Brumley, 2012 WL 1019337, at *10 (noting that common fee arrangements agreed to by plaintiffs have been found to be presumptively reasonable); Scott v. Memory Co., LLC, 2010 WL 4683621 (M.D. Ala. Nov. 10, 2010) (settlement approved with attorneys' fees paid according to plaintiff's contingency agreement with his attorney).

Further, one-third of the total settlement is a common award for attorneys' fees in FLSA collective action cases such as this. See, e.g., Brumley, 2012 WL 1019337, at *12 (noting that the plaintiffs' counsel's requests for one-third of the settlement fund falls within the range of allocations in the context of awards granted in other similar cases); Heath v. Hard Rock Cafe Int'l (STP), Inc., 2011 WL 5877506, at *3 (M.D. Fla. Oct. 28, 2011) (approving fees request of $33.33% of the total settlement amount in FLSA action); Burkholder v. City of Ft. Wayne, 750 F. Supp. 2d 990, 997 (N.D. Ind. 2010) ("a counsel fee of 33.3% of the common fund 'is comfortably within the range typically charged as a contingency fee by plaintiffs' lawyers' in an FLSA action"); Faican v. Rapid Park Holding Corp., 2010 WL 2679903 (E.D.N.Y. July 1, 2010) (approving fee award of 33 1/3 percent in an FLSA action); Wineland v. Casey's Gen. Stores, Inc., 267 F.R.D. 669, 677 (S.D. Iowa 2009) (approving an attorney fee award of 33.33% of settlement fund in an FLSA wage and hour action); see also Yarrington v. Solvay Pharmaceuticals, Inc., 697 F. Supp. 2d 1057, 1064-5 (D. Minn. 2010) (collecting cases and granting award of 33%). The Notice of Settlement advised Plaintiffs of Plaintiffs' Counsel's one-third fee request from the settlement fund. (Ex. B.) No Plaintiff objected to the terms of the settlement providing for Plaintiffs' Counsel to receive one-third of the settlement fund. This too should weigh in favor of the reasonableness of the requested attorneys' fees.

Moreover, based on a preliminary analysis, Plaintiffs' Counsel estimates that their attorneys' request of $166,666.67 is approximately $414.33 more than their lodestar fee amount

of approximately $167,081.00. Additionally, Plaintiffs' Counsel will continue to incur fees over the over the next five years as they will be administering the settlement and disbursing the checks to the Settling Plaintiffs. (Srey Decl. ¶ 18.) See Brumley, 2012 WL 1019337, at *12 (performing a lodestar cross-check and finding plaintiffs' counsel's fees request for less than their lodestar was reasonable); Bredbenner, 2011 WL 1344745, at *21 (performing a lodestar crosscheck and finding that a the plaintiffs' counsel's fee request of 1.88 times the lodestar was "quite reasonable"); Clark v. Ecolab, Inc., 2010 WL 1948198, at *9 (S.D.N.Y. May 11, 2010) (approving attorneys' fees of one-third of the settlement fund in FLSA overtime case); Sanderson v. Unilever Supply Chain, Inc., 2011 WL 6369395, at *2 (W.D. Mo. Dec. 19, 2011) (applying the percentage of the fund method and cross-checking the lodestar to determine reasonableness of attorneys' fees); Heath, 2011 WL 5877506, at *3 (approving one-third of settlement amount for attorneys' fees after cross-checking plaintiffs' counsel's lodestar).

Finally, Defendants are not contesting Plaintiffs' Counsel's attorneys' fees and cost requests. Thus, this factor, too, weighs in favor of granting Plaintiffs' Counsel's attorneys' fees request.

In addition to the attorneys' fees, Plaintiffs' Counsel also seek costs incurred in litigation expenses totaling $29,940.57, all of which counsel advanced with the risk of no recovery. See Chemi, 2009 WL 1470429, at *13 (acknowledging that in common fund cases, counsel is "entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the case"). Further, the scope of reasonable expenses in a case such as this is broad. See Chemi, 2009 WL 1470429, at *13 (approving plaintiffs' counsel's out-of-pocket expenses as reasonable even though the summary of expenses submitted by plaintiffs' counsel was not considerably detailed).

16

Here, an itemization of Plaintiffs' Counsel's costs is attached to the Declaration of Rachhana T. Srey as Exhibit F.   (Srey Decl. ¶ 19.)   These out-of-pocket expenses were appropriately incurred in the prosecution of this case, and should be approved as reasonable.

**D.      The Court Should Approve Service Payments to the Named Plaintiffs and Five Other Plaintiffs Who Were Deposed**

Under the terms of the Agreement, in addition to their individualized allocations from the gross settlement fund, and subject to Court approval, the two original Named Plaintiffs and five other Plaintiffs will each receive an additional award of $250.00 in recognition of their efforts in litigating this case and assistance in securing the settlement in this lawsuit.

Courts have approved recognition payments if they are fair and reasonable.  Chemi, 2009 WL 1470429, at *13 (finding incentive awards of $5,000, $3,000, and $1,000 for various plaintiffs were reasonable in light of the considerable time that the lead plaintiffs invsted in the outcome of the settlement); Heath, 2011 WL 5877506, at *4 (concluding $1000.00 incentive payment of to named plaintiff in FLSA action was reasonable); Risch v. Natoli Engineering Co., LLC, 2012 WL 3242099, at *3 (E.D. Mo. Aug. 7, 2012) (finding fair and reasonable $5,000.00 incentive payment to named plaintiffs in wage and hour class and collective action); Torres v. Gristede's Operating Corp., 2010 WL 5507892, at *7 (S.D.N.Y. Dec. 21, 2010) (awarding an incentive award of $15,000 to each named plaintiff in the settlement of their FLSA overtime claim).

Here, a $250.00 service payment to these seven individuals is modest, fair and reasonable. The two original Named Plaintiffs' efforts in bringing this lawsuit and assisting Plaintiffs' Counsel with the investigation of Plaintiffs' claims and the litigation conferred a substantial benefit on all Plaintiffs.  Likewise, the five Plaintiffs who sat for depositions before Plaintiffs' conditional certification motion was fully briefed conferred a benefit on all Plaintiffs.

17

These service payments are reasonable and appropriate given their modest size, and the fact that they did not significantly reduce the amount of settlement funds available to other Plaintiffs. Defendants do not oppose the award of these service payments.

## CONCLUSION

This FLSA collective action settlement is a product of an arms-length negotiation between counsel that has resolved a *bona fide* dispute over overtime wages. The settlement is fair and reasonable and provides the Settling Plaintiffs with monetary relief. Further, under the terms of the Agreement, the thirty-nine Plaintiffs who have failed to respond to the notice of settlement are not prejudiced because their claims will be dismissed *without* prejudice.

For these reasons, and those set forth above, the Court should approve the parties' Agreement and dismiss this action, with prejudice, consistent with the Proposed Order submitted herewith.

Dated:   March 11, 2013

**NICHOLS KASTER, PLLP**

/s/Rachhana T. Srey
*Rachhana T. Srey, MN Bar No. 340133
*Paul J. Lukas, MN Bar No. 22084X
NICHOLS KASTER, PLLP
4600 IDS Center, 80 South 8th Street
Minneapolis, MN  55402
Telephone: (612) 256-3200
Fax: (612) 215-6870
srey@nka.com
*Admitted *Pro Hac Vice*

**SCHALL & BARASCH, L.L.C.**
Patricia Barasch, NJ Bar No. 0055480
Morrestown Office Center
110 Marter Ave., Ste 302
Moorestown, New Jersey 08057
Telephone: (856) 914-9200
Fax: (856) 914-9420
pbarasch@schallandbarasch.com
ATTORNEYS FOR PLAINTIFFS

18

Dated:   March 11, 2013          **PORZIO, BROMBERG & NEWMAN, P.C.**

/s/Eric L. Probst_____
Eric L. Probst
Thomas O. Johnston
100 Southgate Parkway
Morristown, New Jersey 07962-1997
Telephone: (973) 889-4320
Fax: (973) 538-5146
elprobst@pbnlaw.com

ATTORNEYS FOR DEFENDANTS

19

2344847